**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Wilbert Glover

                Plaintiff,

v.

City of St. Paul Police; Charles Ankney;
Benjamin Buchin; Nicole Spears; and
Anthony Dean;

                Defendants.

Case No. 0:18-cv-00223-JRT-KMM

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on the defendants' motion for summary judgment. (ECF No. 37.) The plaintiff Wilbert Glover opposes the defendants' motion. After careful consideration, the Court recommends that the defendants' motion be GRANTED and Mr. Glover's complaint be DISMISSED.

**I.    FACTS**

This litigation arises out of events that occurred on November 24, 2015. Saint Paul police officers responded to a 911 call from the 1300 block of Marion Street in Saint Paul, Minnesota. (Finnegan Report. Ex. B. at 6.) Responding officers found a victim, D.N.B., at the 911 caller's home. He gave an initial statement that he had been attacked five days earlier by an unknown man, lost consciousness, and later woken up in an unfamiliar house. (*Id.* at 6–7.) The victim reported he was held against his will for five days before escaping that night, at which point he had crawled to the 911 caller's house for help. (*Id.*) D.N.B. gave an additional statement later at a hospital, where he detailed his abduction, confinement, sexual assault, and escape. (*Id.* at 7–9.) He explained that he had never seen the assailant but believed by his voice that he was an older white or black male. (*Id.* at 8.) He described how, after being handcuffed and chained to a pole on a wall for several days, D.N.B. freed himself

1

from his restraints, turned the power off in the house, and exited the house through a ground-floor bathroom window in the back of the house. (*Id.* at 8–9.)

Officers searched the neighborhood for a house with an open or broken bathroom window. Officer Buchin discovered a house on the same block of Marion Street that had a loose screen hanging from an open ground-floor bathroom window and an exterior electric meter that indicated no power was being drawn by the house. (Buchin Report Ex. F. at 5.) This house was later determined to be Mr. Glover's residence. The mailbox at the house discovered by Officer Buchin had the name "Wilbert Glover" on it, and it contained a piece of mail addressed to "Wilbert Glover." (*Id.* at 5.)

Officers canvassed the neighborhood. One neighbor spoke to Officer Dean, who told him that the only person he had seen at the house being investigated was a black man in his 40s or 50s who drove a purple Cadillac. (Dean Report, Ex. J at 8.) Another neighbor told officers that they had only seen a black man in his 40s at the house. (*Id.* at 8–9.) Following this investigation, officers sought a warrant to search the house on Marion Street.

Law enforcement were waiting in front of the house for the search warrant when Officer Buchin saw a gray Cadillac turn onto Marion Street at the nearest corner. It stopped halfway through the turn, and then quickly pulled over in view of the officers. (Buchin Rpt. at 5.) Officer Buchin ran the license plate and learned that the Cadillac was registered to Mr. Glover. (*Id.* at 5.) Law enforcement approached Mr. Glover and requested his driver's license, which he had difficulty locating. (*Id.*) Officers observed Mr. Glover digging around in his car and repeatedly reaching under the driver's seat while searching for his license. (*Id.*) He eventually located his license, which showed a Minneapolis address. (*Id.*) After being asked to step out of his vehicle, officers questioned Mr. Glover about why he was in the area. (*Id.* at 5–6.) Mr. Glover repeatedly told officers that he did not live in the area, and gave vague, incomplete, and contradictory information about a visiting female friend (*Id.* at 6.)

Mr. Glover was the sole occupant of the Cadillac and appeared to match the general description of the resident at the suspect house. (Dean Rpt. at 8.) He is a black man who was 55 years old at the time with graying black hair, a receding

hairline, and a goatee. (*Id.* at 8–9.) However, a pair of neighbors interviewed by Officer Dean did not positively identify Mr. Glover while he was detained at the scene. Those neighbors told law enforcement that the man they had seen last in October had no facial hair, they thought that he made have been bald with darker skin, and they had never spoken with Mr. Glover. (*Id.* at 8–9.) Despite the lack of positive identification, Mr. Glover was placed in the back of Officer Buchin's squad car and transported to police headquarters for questioning by an investigator. (Buchin Rpt. at 6.) Only Officer Buchin transported Mr. Glover to headquarters. (*Id.*)

### A. Allegations Within the Complaint

Mr. Glover alleges that when he arrived at Marion Street on November 24, 2015, several officers approached his vehicle with guns drawn, saying "That's the n***** defendant show your hands nasty n***** perpetrator." (Compl. at ¶ 7.) He alleges that Officer Ankey kept stating "this is the nasty n*****" as the officers approached. (*Id.*) Mr. Glover asserts that Officer Anthony also engaged in the use of racial epithets against him, alleging that Officer Anthony stated "this the n***** he is lying" multiple times. (*Id.* at ¶ 8.) He further alleges that Officer Anthony called him a "drug dealer nasty n*****." (*Id.*)

Mr. Glover alleges that he was illegally arrested due to his race. He claims that arresting officers made racially derogatory comments to him during his arrest and after he was taken to police headquarters. (*Id.* at ¶ 7-B.) Mr. Glover later filed a charge of discrimination with the Minnesota Department of Human Rights, alleging that while he was being arrested, officers stated "n*****, show your hand." (*Id.* at ¶ 7-C.) He further alleged that multiple officers drove him to the police station, referring to him as a "nasty n***** perpetrator" as they drove. (*Id.*)

Mr. Glover asserts that he was arrested due to racial profiling, and that no probable cause supported the arrest. (*Id.* at ¶ 8-C.) He claims that the abuse continued when he reached the police headquarters, alleging that Officer Buchin called him several derogatory names, including more racial epithets, and failed to give him *Miranda* warnings before questioning. (*Id.* at ¶ 9.) Mr. Glover further alleges that Sergeant Spears, who was with him and Officer Buchin in a conference room at police headquarters, also subjected Mr. Glover to numerous racial epithets. (*Id.* at ¶ 10.) Mr.

3

Glover also states that he ran into Sergeant Spears in a holding cell at Regions Hospital on March 10, 2016, where he alleges that she called him "nasty n***** Glover perpetrator" numerous times and told him that he should be killed in jail. (*Id.* at ¶ 11.)

## II.   ANALYSIS

Mr. Glover filed this lawsuit alleging three counts: Racial Discrimination and Retaliation in violation of 42 U.S.C. § 1981; Racial Discrimination and Reprisal in violation of the Minnesota Human Rights Act; and Racial Discrimination and Retaliation in violation of 42 U.S.C. § 1983. (Compl. ¶ 14.) The defendants filed the current motion for summary judgment on November 8, 2019. After careful consideration, the Court determines that the defendants' motion should be GRANTED.

### A.   Summary Judgment Standard

A movant is entitled to summary judgment where "no genuine dispute as to any material fact [exists] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where no reasonable jury could find in favor of the non-movant, there is no genuine dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are only those "that might affect the outcome of the suit under the governing law." *Id.* Where there is a genuine dispute of facts, those facts should be viewed in the light most favorable to the non-moving party. *E.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Id.*

The moving party must first "identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). It can satisfy its burden either by demonstrating evidence that negates an essential element of the non-movant's case or by showing that insufficient evidence exists to support the non-moving party's case. *Id.* Once the

4

moving party has satisfied its initial burden, the responsibility shifts to the non-moving party to submit evidence of "specific facts showing the presence of a genuine issue for trial." *Id.* (citing *Torgerson*, 643 F.3d at 1042). In doing so, "[a non-moving party] may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790–91 (8th Cir. 2009) (quotations and citations omitted); *see also Frevert v. Ford Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010) ("[a] properly supported motion for summary judgment is not defeated by self-serving affidavits." (quoting *Bacon v. Hennepin Cty. Medical Center*, 550 F.3d 711, 716 (8th Cir. 2008))).

Because Mr. Glover is proceeding *pro se*, the Court construes his submissions liberally. However, even with this liberal standard, the Court finds that Mr. Glover has not satisfied his burden to rebut the defendants' motion by demonstrating the presence of a genuine issue of material fact.

### B.   Claims Against the City of Saint Paul Police

Mr. Glover has named the City of Saint Paul Police as a defendant in this matter. However, municipal police departments are not subject to suit. *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 709 (D. Minn. 2015). Because they are departments or subdivisions of the city government, the city itself is the proper entity for suit. *Id.* Defendants contend that because the City of Saint Paul Police Department is not subject to suit, all claims against it must be dismissed. The Court agrees. Though the Court recognizes that it must interpret pro se pleadings liberally, it declines to construe Mr. Glover's allegations against the City of Saint Paul Police as allegations against the City of Saint Paul itself. *See id.* (dismissing claims against a municipal police department by a pro se plaintiff). To do so would, among other things, create a serious question about whether the City of Saint Paul had ever been served properly.

Construing the complaint as naming the City itself would also be unhelpful for Mr. Glover because he has failed to state a *Monell* claim. A municipality can only be held liable under § 1983 if "an action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Servs.*, 436 U.S. 658,

691 (1978). Here, Mr. Glover has failed to allege or identify any policy or custom of the City of Saint Paul as part of his complaint. Regardless of how the Court construes Mr. Glover's named defendant, this failure to identify a policy is a fatal flaw to a claim against a municipal entity.

For these several reasons, all claims against the City of Saint Paul Police must be dismissed.

### C.    42 U.S.C. § 1981 Claims

The defendants argue that 42 U.S.C. § 1981 is not the correct statutory remedy for Mr. Glover's racial discrimination and retaliation claims. The Court agrees. Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

However, any racial discrimination or retaliation claims pursuant to § 1981 for violations by state actors are only actionable under § 1983. *See, e.g.*, *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 735 (1989) (holding that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."). The law enforcement officers involved in this case are clearly state actors, and there is no argument made by Mr. Glover to the contrary. Therefore, the sole remedy exists in § 1983, not § 1981, and the § 1981 claims must be dismissed for failure to state a claim upon which relief can be granted.

### D.    42 U.S.C. § 1983 Claims

Mr. Glover complaint very simply asserts "Count Three—Race Discrimination Retaliation Reprisal in Violation Under 42 U.S.C. § 1983." (Compl. ¶ 14.) The Court

liberally interprets this as alleging two separate § 1983 violations: a claim of retaliation, and an equal protection claim. Both fail to defeat summary judgment.

### 1. Retaliation

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). With respect to the third prong, the plaintiff must demonstrate that the retaliatory motive was a "substantial factor" of the adverse action. *Id.* (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)). In other words, the plaintiff must show that he would not have suffered the adverse action but for his protected activity. *Id.*; *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006). Additionally, in retaliatory arrest cases, a fourth element exists: the lack of probable cause. *Peterson*, 754 F.3d at 602 (citing *Galarnyk v. Fraser*, 687 F.3d 1070, 1076 (8th Cir. 2012). If the retaliation is only a detention, there must be a lack of reasonable suspicion to justify that detention. *Waters v. Madson*, 921 F.3d 725, 741–42 (8th Cir. 2019).

Mr. Glover's retaliation claims fail on the first element—he has not alleged that he was engaged in a protected activity when he was detained. Even reading the complaint liberally, it is impossible to discern a protected activity that could be at issue around the time of his arrest. His claims also fail because law enforcement had probable cause to detain and arrest Mr. Glover.

A temporary investigative detention ("*Terry* stop") may be effected upon reasonable suspicion that criminal activity is afoot. *E.g.*, *Waters*, 921 F.3d at 736. Reasonable suspicion "requires at least some minimal level of objective justification." *Id.* (quoting *De La Rosa v. White*, 852 F.3d 740, 744 (8th Cir. 2017) (internal quotation marks omitted). Courts look at the totality of the circumstances to determine whether a detaining officer had a reasonable suspicion of legal wrongdoing. *Id.* Only the information that the detaining officer possessed at the time of the detention should be considered. *Id.* However, "[t]he collective knowledge of law enforcement officers

7

conducting an investigation…can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008).

A review of the totality of circumstances in this case reveals that reasonable suspicion to stop and detain Mr. Glover existed based on the collective knowledge of the officers involved in the kidnapping investigation. First, the officers reasonably believed that the victim, D.N.B., had recently escaped from a criminal kidnapping. He was found with metal restraints, injuries, and a distressed mental state consistent with being the victim of such a crime. Second, officers had reason to believe they had found the house from which D.N.B. had escaped. It had an open bathroom window with a damaged screen and had no power, which was consistent with D.N.B.'s report that he had escaped through a bathroom window after disabling the power at the house where he had been held. Third, it was reasonable to stop Mr. Glover because he matched the general description given by the neighbors regarding the sole occupant of the suspect house. Fourth, the Cadillac was registered to Mr. Glover, whose name was also on a piece of mail located in the mailbox at the suspect house.

Once officers stopped Mr. Glover, they also had reasonable suspicion to detain him. An officer may request a driver's license and registration, conduct computer checks, and ask about a driver's destination and purpose during a lawful traffic stop. *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001). When officers in this case did this, Mr. Glover repeatedly denied living in the area, despite the fact that officers had found mail addressed to him at the suspect house. Mr. Glover also gave contradictory and evasive answers when asked why he was in the neighborhood. Evasive answers or attempting to conceal things from law enforcement can contribute to a reasonable suspicion of criminal activity. *See United States v. Bailey*, 417 F.3d 873, 877–78 (8th Cir. 2005).

Mr. Glover was not informed that he was being arrested when he was placed in the squad car. However, the defendants concede that Mr. Glover's detention was converted to a *de facto* arrest at this point. (Def. Mem., ECF 39, at 21.) An arrest without a warrant requires probable cause to believe that an individual has committed a criminal offense. *E.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists where the facts and circumstances within…the officers'

8

knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the believe that an offense has been or is being committed." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)). Courts consider the totality of the circumstances when determining if probable cause existed at the time of the arrest, and, like reasonable suspicion, impute the collective knowledge of all law enforcement onto the arresting officer. *E.g.*, *United States v. Thompson*, 533 F.3d 964, 970 (8th Cir. 2008).

Here, all of the circumstances that supported an initial finding of reasonable suspicion also support a finding of probable cause. Additionally, the Court notes that Mr. Glover has already challenged whether probable cause existed on these facts, and that it was upheld by both the state trial court and appellate court. *See State v. Glover*, A17-483, 2018 WL 2293266 at *2–3 (Minn. Ct. App. May 21, 2018). Indeed, a state court's finding that probable cause existed at the time of an arrest bars a criminal defendant from later challenging the evidence to establish probable cause in a subsequent civil action. *See Allen v. McCurry*, 449 U.S. 90, 104–05 (1980); *Crumley v. City of Saint Paul, Minn.*, 324 F.3d 1003, 1006–07 (8th Cir. 2003).

Mr. Glover simply cannot demonstrate the critical elements of a retaliation claim. Therefore, summary judgment in favor of the defendants is appropriate here.

### 2. Equal Protection

Mr. Glover's allegation that he was stopped and arrested due to his race is also cognizable as an equal protection claim. *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003). In order to succeed on a claim of unequal enforcement of a facially neutral law, a plaintiff must demonstrate both discriminatory effect and discriminatory purpose. *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996). Mr. Glover cannot do either. Therefore, summary judgment in favor of the defendants should be granted.

Establishing discriminatory effect requires the plaintiff to show that people of a different race also violated the law, but that the law was not enforced against them. *Id.* Mr. Glover had not presented any evidence to suggest that non-black individuals

were also suspected of violating Minnesota's kidnapping statute but were not arrested. Therefore, he cannot establish the first critical element of an equal protection claim.

Because there is no evidence to show discriminatory effect, Mr. Glover has failed to establish a genuine issue of material fact with respect to his equal protection claims, and summary judgment for the defendants is warranted.

### 3. Additional § 1983 Claims

The defendants address three more claims that Mr. Glover has not expressly alleged, but that his submissions could be fairly read to assert as constitutional violations cognizable under § 1983: (1) a § 1983 unlawful seizure claim; (2) the officer's alleged use of a racial epithet; and (3) an alleged failure to provide a Miranda warning. All of these claims, if asserted by Mr. Glover, also fail to defeat summary judgment.

#### i. Unlawful Seizure

Though Mr. Glover does not expressly allege a § 1983 unlawful seizure claim, the defendants briefed it in their summary judgment memorandum, apparently out of an abundance of caution. To the extent that Mr. Glover *does* allege such a claim, the Court notes that it would fail for the same reasons as enumerated in the Court's discussion of his retaliation claim. Specifically, the Court must consider whether the officers had probable cause to arrest Mr. Glover when evaluating any false arrest or unlawful seizure claim. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). As discussed above, it is clear that Mr. Glover's detention and arrest were supported by probable cause. *See* discussion, *supra*. Therefore, summary judgment should be granted in favor of the defendants on this unenumerated claim.

#### ii. Use of Racial Epithet

Mr. Glover's submissions may be read to assert a § 1983 claim against the defendants arising out of their alleged use of racial epithets during his arrest. The Court acknowledges the reprehensible nature of the alleged language and does not condone its use. However, the Eighth Circuit has held that the use of a racial epithet

10

is not, by itself, a constitutional violation. *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015). To be cognizable as a § 1983 claim, Mr. Glover would have to allege the use of force or the infliction of injury alongside the use of the racial epithets. *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). However, he has not done so here, and there is no evidence in the record to support a finding of such. Thus, to the extent that Mr. Glover has alleged a § 1983 claim for the use of racial epithets, it should be dismissed.

### iii. Failure to Read *Miranda* Warnings

Finally, the alleged failure to provide a *Miranda* warning is not a claim cognizable under § 1983. The *Miranda* exclusionary rule is a "prophylactic measure" designed by the judiciary to safeguard the constitutional right against self-incrimination. *Chavez v. Martinez*, 538 U.S. 760, 772 (2003); *see also Warren v. Lincoln*, 864 F.3d 1436, 1442 (8th Cir. 1989). "Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Chavez*, 538 U.S. at 772. Even if Mr. Glover had properly alleged and demonstrated evidence of a *Miranda* violation (and he has not), the proper remedy would not be found in § 1983, but in a motion to suppress any resulting statement in his criminal case. Thus, to the extent Mr. Glover alleges such a claim, summary judgment on it in favor of the defendants must be granted.

### E. Minnesota Human Rights Act Claims

The final claims remaining are Mr. Glover's Minnesota Human Rights Act ("MHRA") claims, plead under Count Two. The MHRA is a state statute which protects individuals against discrimination "in the access of, admission to, full utilization of or benefit from any public service because of race." Minn. Stat. § 363A.12, subd. 1. However, because all of Mr. Glover's federal law claims should be dismissed, this Court recommends that the Court decline to exercise supplemental jurisdiction over his state law claim and dismiss it as well.

Under 28 U.S.C. § 1367, where a federal court has original jurisdiction, it also has supplemental jurisdiction over "all other claims so related to the claims in the original jurisdiction that they form part of the same case or controversy." *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000). If all claims over which that court has original jurisdiction are dismissed, then the court may, in its discretion, choose whether to continue to exercise supplemental jurisdiction. *Id.*; *see also* 28 U.S.C. § 1367 (c)(3); *Glorivigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009). Judicial economy, convenience, comity, and fairness are factors that must be considered by the Court. *Glorivigen*, 581 F.3d at 749 (citing *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006). However, there is a strong preference in the law for declining to exercise supplemental jurisdiction. Indeed, the Supreme Court has opined that, in most cases where all federal law claims have been dismissed, not exercising supplemental jurisdiction is the proper course of action. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Eighth Circuit follows this restraint cautioned by the Supreme Court. *See, e.g.*, *Gregoire*, 236 F.3d at 420 ("We stress the need to exercise judicial restraint and avoid state law issues wherever possible." (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990)).

Mr. Glover's MHRA claims should be dismissed as a matter of comity. *See ACLU v. City of Florissant*, 186 F.3d 1095, 1098–99 (8th Cir. 1999) (noting that when all federal claims are dismissed on a motion for summary judgment, the state claims "are ordinarily dismissed without prejudice to avoid needless decisions of state law"); *see also Gregoire*, 236 F.3d at 420 (remanding a case for determination of whether to exercise supplemental jurisdiction after finding summary judgment was appropriate on all federal law claims). This is especially true here, because there are potentially conflicting state law cases regarding a key element of Mr. Glover's claims—whether racial epithets alone constitute discriminatory conduct under the MHRA, or whether those epithets must be combined with threats or threatening actions in order to be actionable. *Compare Ricci v. Minneapolis Police Dept.*, No. A09-1352, 2010 WL 2362535 at *3 (Minn. Ct. App. June 15, 2010) (finding that use of racial epithet combined with threats of violence or aggressive behavior constituted discrimination) *with Minneapolis Police Dept. v. Kelly*, 776 N.W. 2d 760, 767 (Minn. Ct. App. 2010) (finding that racial

12

epithets alone are direct evidence of discrimination). Declining to exercise supplemental jurisdiction here promotes comity and fairness, as having the MHRA claims decided in state court would provide "a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. It is therefore recommended that the Court decline to exercise supplemental jurisdiction and dismiss Mr. Glover's MHRA claims without prejudice.

### III.   Recommendation

In sum, for the reasons set forth above, the Court concludes that Mr. Glover has not demonstrated a genuine issue of material fact regarding any of his claims, and the defendants are entitled to summary judgment.

Accordingly, the Court makes the following recommendations:

1.   The defendant's Motion for Summary Judgment (ECF No. 37) be GRANTED;

2.   Mr. Glover's federal claims should be DISMISSED WITH PREJUDICE; and

3.   Mr. Glover's MHRA claims should be DISMISSED WITHOUT PREJUDICE.


Date: February 18, 2020                                     *s/Katherine Menendez*
                                                                          Katherine Menendez
                                                                          United States Magistrate Judge


### NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the

objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

Under Advisement Date: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.