UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WILBERT GLOVER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAINT PAUL POLICE DEPARTMENT, CHARLES ANKNEY, BENJAMIN BUCHIN, NICOLE SPEARS, AND ANTHONY DEAN,<br><br>　　　　　　　　　　Defendants. | Civil No. 18-223 (JRT/KMM)<br><br>**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S OBJECTIONS, ADOPTING THE REPORT AND RECOMMENDATION, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Wilbert Glover, 435 University Avenue East, Saint Paul, Minnesota 55130, *pro se* plaintiff.

Kyle Citta and Stephen J. Christie, Assistant Saint Paul City Attorneys, **SAINT PAUL CITY ATTORNEY'S OFFICE**, 15 West Kellogg Boulevard, Suite 750, Saint Paul, Minnesota 55102, for defendants.

Plaintiff Wilbert Glover seeks $5,700,000 in damages for alleged violations of his rights under (1) 42 U.S.C. § 1981; (2) Minn. Stat. § 363A.01; and (3) 42 U.S.C. § 1983. Defendants filed a Motion for Summary Judgment and the Magistrate Judge issued a Report and Recommendation ("R&R") recommending the Court grant the Motion. On de novo review, the Court concludes that Defendants had probable cause to arrest Glover and that the alleged use of racial epithets during the arrest does not constitute a violation under 42 U.S.C. § 1983. Accordingly, the Court will overrule Glover's Objections, adopt the R&R, and grant Defendants' Motion for Summary Judgment.

1

**BACKGROUND**

I.  **FACTUAL BACKGROUND**

On November 24, 2015, Saint Paul police officers responded to a 911 call reporting a possible kidnapping victim. (Aff. of Jonathan Finnegan ("Finnegan Aff.") ¶ 2, Ex. B. at 8, Nov. 8, 2019, Docket No. 40.) The victim, D.N.B., still with handcuffs on his ankles and one wrist, had knocked on a door and explained that he'd been kidnapped. (Finnegan Aff., Ex. B at 8.) D.N.B reported he was attacked by an unknown man on a street in North Minneapolis five days earlier, became unconscious, and awoke in an unknown house where he was handcuffed, chained to a pole on a wall, and repeatedly sexually assaulted. (*Id.* at 9–10.) D.N.B. reported that earlier that day, he heard the assailant leave the house and was able to free himself from some of the restraints and exit through a ground-floor bathroom window in the back of the house. (*Id.* at 9–11.) Prior to his escape, D.N.B. pulled on a fuse box in the basement which cut power to the house. (*Id.* at 10.) Although D.N.B. was blindfolded and never saw the assailant, he reported that his voice sounded like that of a white or black male between 40 and 50 years old. (*Id*.) D.N.B. reported only one person being involved in the kidnapping. (*Id.*)

Sergeant Nicole Spears coordinated the police investigation and instructed Officers Charles Ankney, Benjamin Buchin, and Anthony Dean[1] to search the neighborhood for a house with an open or broken bathroom window. (Aff. of Nicole A. Spears ¶ 2, Ex. D. at 18, Nov. 8, 2019, Docket No. 40.) Buchin discovered a house consistent with D.N.B.'s report; it had an open ground-floor bathroom window with a damaged screen and an exterior electric meter indicating that no power was being drawn. (Aff. of Benjamin Buchin ("Buchin Aff.") ¶ 2, Ex. F at 27, Nov. 8, 2019, Docket No. 40.) The mailbox at this house contained mail addressed to Wilbert Glover. (*Id.*) A neighbor told Dean they had seen a black male in his forties or fifties who drove a purple Cadillac. (Aff. of Anthony Dean ("Dean Aff.") ¶ 2, Ex. J at 19, Nov. 8, 2019, Docket No. 40.) Another neighbor reported seeing a black male in his forties raking leaves in the front lawn of the home. (*Id.* at 19–20.)

Spears, Ankney, Buchin, and Dean were waiting for a search warrant while in front of the house when Buchin observed a gray Cadillac sedan turn onto the street at a nearby corner, stop halfway through the turn, and quickly pull over. (Buchin Aff., Ex. F at 27.) Buchin ran the license plate and learned it was registered to Wilbert Glover. (*Id.*) Spears, Ankney, Buchin, and Dean approached the vehicle to investigate. (*Id.*) They asked Glover

---

[1] In his Complaint, Glover refers to Officer Anthony Dean as "Dean Anthony." The R&R refers to him as both "Officer Dean" and "Officer Anthony" in different sections. Based on Spear's report, this Opinion will refer to him as "Dean."

for his driver's license and he had trouble locating it, repeatedly reaching under the driver's seat. (*Id.*) They also asked Glover to step out of his vehicle and questioned him on why he was in the area. (*Id.* at 27–28.) Glover stated that he did not live in the area and provided vague, incomplete, and contradictory information about a female friend he claimed to be visiting. (*Id.* at 28.)

Glover appeared to match the general description of the resident who lived at the house. (Dean Aff., Ex. J at 19.) He was a 55-year-old black male with greying black hair, a receding hair line, and a goatee. (*Id.* at 8–9.) A neighbor could not positively identify Glover at the scene because she thought the man that she remembered was bald with darker skin. (*Id.* at 20.) The neighbor also stated she had never spoken with Glover before. (*Id*.) Although lacking positive identification, Spears directed Buchin to transport Glover to police headquarters for questioning. (Buchin Aff., Ex. F at 28.) Glover was placed in the back of Buchin's squad car as other officers remained in the neighborhood or arrived at headquarters on their own. (*Id.*)

Glover alleges that Spears, Ankney, Buchin, and Dean approached his vehicle with guns drawn, saying "That's the n***** defendant show your hands nasty n***** perpetrator." (Compl. ¶ 7, Jan. 25, 2018, Docket No. 1.) Glover also alleges that Dean used racial epithets, saying "this the n***** he is lying" and calling him "drug dealer nasty n*****." (*Id.* at ¶ 8.) He alleges that while he was being arrested, officers stated "n*****, show your hand," and that multiple officers drove him to the police headquarters,

4

referring to him as a "nasty n***** perpetrator" as they drove. (*Id.* at ¶ 7-C.) Glover claims that when they reached police headquarters, Buchin called him several derogatory names and failed to read him his *Miranda* warnings before questioning. (*Id.* at ¶ 9.) Lastly, he claims that Spears called him "nasty n***** Glover perpetrator" numerous times and told him that he should be killed in jail. (*Id.* at ¶ 11.)

## II.    PROCEDURAL BACKGROUND

On January 25, 2018, Glover filed a Complaint against Spears, Ankney, Buchin, Dean, and the City of Saint Paul Police Department, seeking $5,700,000 in damages for the alleged violations of his rights under (1) 42 U.S.C. § 1981, (2) Minn. Stat. § 363A.01, and (3) 42 U.S.C. § 1983. (Compl. at 5.) On November 8, 2019, Defendants filed a Motion for Summary Judgment requesting that Glover's claims be dismissed with prejudice. (Mot. for Summ. J., Nov. 8, 2019, Docket No. 37.) On February 18, 2020, the Magistrate Judge filed an R&R which granted Defendants' Motion for Summary Judgment, dismissed Glover's federal claims with prejudice, and dismissed Glover's state claims without prejudice. (R&R at 13, Feb. 18, 2020, Docket No. 68.) On March 6, 2020, Glover filed his Objections to the R&R. (Obj. to R&R, Mar. 6, 2020, Docket No. 69.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Upon the filing of an R&R by a Magistrate Judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ.

P. 72(b)(2); *accord* D. Minn. Local R. 72.2(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. Local R. 72.2(b)(3).

Here, the Magistrate Judge issued a recommendation on a Motion for Summary Judgment. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, when doing so, the Court must remember that materials "filed pro se [are] 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**II.   PLAINTIFF'S OBJECTIONS**

Glover objects to the R&R's conclusion that he failed to demonstrate a genuine issue of material fact regarding his claims in two main respects.[2] First, he argues that there was a lack of probable cause for his arrest because there was "no evidence of abduction or any sexual assault." (Obj. to R.&.R. at 1, Mar. 6, 2020, Docket No. 69.) In support of this claim, Glover refers to the testimony of an Officer Himes, given in an earlier state criminal proceeding, that when executing the search warrant, "there may have been lights on in the basement" of the house. (*Id.* at 3.) Glover also claims that Defendants lacked probable cause to arrest him because they have since put forward more than two different stories in their documentation of events. (*Id.* at 2.) Second, Glover asserts that discovery would present material facts from which a reasonable jury could conclude that Defendants used racist epithets during his arrest. (*Id.* at 4.)

**III.   LACK OF PROBABLE CAUSE**

A state court's finding that probable cause existed at the time of an arrest bars a criminal defendant from later challenging the evidence to establish probable cause in a subsequent civil action. *See Allen v. McCurry*, 449 U.S. 90, 104–05 (1980); *Crumley v. City of Saint Paul, Minn.*, 324 F.3d 1003, 1006–07 (8th Cir. 2003). Glover has already challenged

---

[2] Glover also asserts that the Minnesota Department of Human Rights misquoted a statement of his in a document. Because it has no bearing on this case, the Court will not address this assertion.

whether probable cause existed on these facts and both the state trial and appellate courts concluded that there was probable cause for arrest. *See State v. Glover*, A17-483, 2018 WL 2293266 at *2–3 (Minn. App. May 21, 2018). Therefore, the Court will overrule Glover's probable-cause objection.

### IV.   USE OF RACIST EPITHETS

Glover asserts that discovery would present material facts from which a reasonable jury could conclude that Defendants used racist epithets during his arrest. However, the Eighth Circuit has held that the use of such epithets during an arrest does not rise to the level of a § 1983 violation without some showing of force or injury. *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015). The Court recognizes the reprehensible nature of the alleged language and use of racist epithets. Even if proven true, however, the use of racist epithets would be insufficient to support Glover's § 1983 claim because he has not alleged facts demonstrating force or injury. Therefore, the Court will overrule Glover's racist-epithet objection.

### V.  MINNESOTA HUMAN RIGHTS ACT

Under the federal supplemental-jurisdiction statute, the Court may dismiss state-law claims when all other claims over which it had original jurisdiction have been dismissed. 28 USC §1367(c)(3). The Court will do so here. Glover may opt to refile in state court within the period of limitations as tolled by § 1367. *See* 28 USC § 1367(d) ("[t]he period of limitations for any claim . . . shall be tolled while the claim is pending and

for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."); *see also Artis v. District of Colombia*, 138 S. Ct. 594, 598 (2018) (clarifying that the 30-day period in § 1367(d) is not just a grace period but continues the stopped clock on the statute of limitations).

## CONCLUSION

Because Glover is barred from contesting the state-court finding that probable cause existed for his arrest, and because he does not allege sufficient facts demonstrating force or injury in addition to the use of racist epithets by officers during his arrest, the Court will Defendants' Motion for Summary Judgment on Glover's federal claims. The Court will also decline to exercise supplemental jurisdiction over Glover's remaining state-law claims.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections [Docket No. 69] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 68] is **ADOPTED**; and

3. Defendants' Motion for Summary Judgment [Docket No. 37] is **GRANTED:**

    a. Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**; and

    b. Plaintiff's Minnesota Human Rights Act claims are **DISMISSED WITHOUT PREJUDICE**.

9

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 6, 2020
at Minneapolis, Minnesota.

_____*John R. Tunheim*_____
JOHN R. TUNHEIM
Chief Judge
United States District Court